UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| William Douglas Dawson, Jr., #248371, | ) C/A No. 4:14-3428-DCN-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Report and Recommendation |
| Officer Timothy Loving, in his official capacity, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## **I.  PROCEDURAL BACKGROUND**

The Plaintiff, William D. Dawson, filed this action under 42 U.S.C. § 1983[1] on August 25, 2014, alleging violations of his constitutional rights. Plaintiff is currently housed at Lee Correctional Institution. At all times relevant to the allegations in the complaint, Plaintiff was housed at Perry Correctional Institution (PCI). Defendant filed a motion for summary judgment on June 15, 2015, along with a memorandum, exhibits, and affidavits supporting the motion. (Doc. # 38).  Because the Plaintiff is proceeding pro se, he was advised on or about June 16, 2015, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendant's motion for summary judgment could result in the dismissal of his complaint.  (Doc. # 39).  The Plaintiff filed a response on July 20, 2015, attaching "declarations" from two other inmates.  (Doc. #42).

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

## II.  STANDARD FOR SUMMARY JUDGMENT

As previously stated, the Defendant filed a motion for summary judgment.  A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See* Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986). The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In *Celotex*, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to

which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### III. DISCUSSION

Plaintiff alleges that his constitutional rights were violated when he was subjected to excessive force by Defendant Loving. Specifically, Plaintiff alleges as follows in his complaint:

> On 10-8-13 during a sick call visit (my blood pressure was up so I went to sick call) Sgt. Wright and ofc. Loving escorted me. At the time of this incident I was a S.M.U./lock-up prisoner (all prisoners on segregation/lock-up have to be escorted by at least two officers' and are at all times in full restraints' "hand-cuffs-two pair, leg irons/Shackels, and lead chain." During this medical visit I the Plaintiff was in a verbal dispute with the nurse about the medical care I was not receiving. In the middle of arguing with the nurse Sgt. Knight and ofc. Loving physically removed me from the sick call room. At the door to my cell while standing there with these two officer behind me (and I'm in full restraints) I looked over my shoulder and began to question Sgt. Wright as to why they removed me from sick call the way that they did when ofc. Loving just went crazy and started jerking the lead chain. He (ofc. Loving) was jerking the chain so hard with so much force that he snatched my right arm through the little flap on the cell door. At this time Lt. Roberson comes running up and he's reaching through the bars and holding my leg irons/shackles as if to keep from moving while ofc. Loving is going crazy and still snatching on the lead chain (that's handcuff to my right wrist). At this point my whole right arm is through the opening in the bars (the flap) and I'm screaming at ofc. Loving to stop jerking my arm and why was he jerking me!! I'm in full restraints! There is a iron bar door separating me from these officers and the door is secure (locked) so there is no way I was nor could have been a threat. . . . Sgt. Wright had to physically restrain ofc. Loving to get him to stop jerking on the lead chain thus pulling my arm through the flap and damaging my right wrist (I could not use my right hand/wrist for a minimum of three (3) months.) . . .

(Complaint).

Defendant submitted an affidavit from Tony Wright (Wright) who attests that he is employed with the South Carolina Department of Corrections as a Sergeant and assigned to PCI.

3

(Wright affidavit, doc. #38-2). On October 8, 2013, Officer Loving and Wright were in the sick room while the Plaintiff was being seen by the medical staff. Id. Plaintiff was arguing with a nurse and was told several times to get up to go back to his cell. Id. Officer Loving and Sgt. Wright escorted Plaintiff back to his cell in the Special Management Unit (SMU) on that date. Id. Wright placed his right arm under Plaintiff's left shoulder and his left hand on Plaintiff's wrist while escorting him. Id. Plaintiff was restrained with multiple sets of handcuffs, leg restraints and a lead chain because he was housed in the SMU. Inmates in that unit pose a higher threat to security than the general populations and are restrained every time they leave their cell. Id. Wright attests that Officer Loving did not jerk on the lead chain at any point while Plaintiff was being escorted or being placed back in his cell. Id. Plaintiff's restraints were removed through the openings in the cell door after he was placed in the cell. Id. Wright attests that he did not observe any excessive force being used by Officer Loving and did not stop, restrain or interfere with Officer Loving during this time, nor did he need to do so. Id. Wright attached a copy of his Incident Report as Exhibit A along with a copy of the Report on the Use of Force as Exhibit B. Id.

In Exhibit B, Report on the Use of Force, it reveals Plaintiff was escorted back to his cell for failure to follow a directive to move on October 8, 2013. Under extent of injuries, Nurse Harris found Plaintiff had a "small red mark around R wrist. No open areas, bruising. Good ROM." Plaintiff was afforded Tylenol or Motrin but denied the over-the-counter pain medication. (Doc. #38-4). There is no evidence that Plaintiff complained of pain in his wrist to medical after that date.

Timothy Loving (Loving) submitted his affidavit attesting that on October 8, 2013, he was employed with the South Carolina Department of Corrections and assigned to PCI. (Loving affidavit). On October 8, 2013, Plaintiff was an inmate assigned to the SMU where inmates are

4

restrained with multiple sets of handcuffs, leg restraints and a lead chain every time they leave their cell. Inmates in SMU are generally there as a result of disciplinary violations and pose a higher threat to security than the inmates in the general population. Loving and Wright were in the sick call room and Plaintiff was arguing with the nurse refusing to follow instructions "to get up and return to his cell." Id. Plaintiff was given at least three orders before Loving and Wright escorted Plaintiff back to his cell. Id. During the escort, Loving placed his left hand under Plaintiff's right shoulder and his right hand on Plaintiff's right forearm. Id. After Plaintiff was placed in his cell, his restraints were removed through the cell door openings. Id. Loving did not jerk on the lead chain at any time and was not physically restrained by Sergeant Wright at any time. Id. Loving only used the amount of force necessary to escort the Plaintiff to his cell, and Plaintiff's restraints were removed without the use of additional force. Id. Loving attached a copy of the incident report and Report of Use of Force.

In response in opposition to the motion for summary judgment, Plaintiff argues that Loving was snatching the lead chains for no reason causing damage to his wrist. Plaintiff submitted the declaration of inmate Javion Samuel who asserts he was housed in PCI in SMU lock-up on October 8, 2013. (Samuel declaration, doc. # 42-1). Samuel states that he observed Officer Loving and Sgt. Wright arguing with Plaintiff. Id. Samuel asserts that Lt. Roberson came running up as they were putting Plaintiff in his cell and that Plaintiff started "hollering" at Ofc. Loving to stop jerking his chains resulting in Sgt. Wright having to stop Officer Loving. Id.

Plaintiff also submitted the declaration of Gary L. Robinson who asserts that he was housed in the SMU on October 8, 2013, when he saw Officer Loving pulling hard with the release chain. (Robinson declaration, doc. #42-1). Robinson states that Officer Loving was pulling and snatching

5

the release chain several times real hard before giving Plaintiff a directive to comply. Robinson asserts that Lt. Robinson and Sgt. Wright were present. Id.

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The predominate focus in a claim for excessive force is not on the extent of the injury but rather the nature of and justification for the inflicted force. Wilkins v. Gaddy, 599 U.S. 34, 37 (2010). The Eighth Amendment analysis requires inquiry at to whether a prison official "acted with a sufficiently culpable state of mind and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Williams, supra.

In an excessive force claim, a claimant must meet a heavy burden to satisfy the subjective component. Whitley v. Albers, 475 U.S. 312, 321 (1986). The claimant must show that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good faith effort to maintain or restore discipline. (Id.) (internal quotation marks omitted). The objective component is not as demanding because "[when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated whether or not significant injury is evidence." Wilkins v. Gaddy, supra, (internal quotation marks omitted).

In an excessive force claim, the state of mind is "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. at 322. In Whitley, the Supreme Court identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted";

6

and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." Whitley v. Albers, 475 U.S. 312, 321 (1986). Whether there is an Eighth Amendment violation in the context of a prison disturbance depends upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins, 130 S.Ct. 1175, 1178. See also Hudson v. McMillan, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).[2]

Here, the Plaintiff's allegations do not support a claim of excessive force. It is undisputed that Plaintiff was escorted back to his cell in SMU after arguing with the nurse. It is undisputed that he was escorted in restraints as is the policy with all inmates housed in the SMU. Other than his self-serving statements, Plaintiff fails to present evidence to support injury to his wrist as he asserts. Even if Officer Loving pulled on the lead chain, Plaintiff fails to show that Officer Loving did so "maliciously and sadistically for the very purpose of causing harm." After Plaintiff was returned to his cell, he was evaluated by the nurse, Nurse Harris, who noted that Plaintiff only had a red mark on his right wrist with no open areas, bruising and had good range of motion. (Doc. # 38-4). Further, the nurse noted that Plaintiff declined Tylenol or Motrin. There was no treatment needed. Thus, although Plaintiff disputes that no injury occurred, the allegations are not sufficient to give rise to

---

[2] While the United States Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," this does not mean the extent or absence of serious injury is irrelevant. Wilkins , 130 S.Ct. at 1178. Instead, the extent of injury suffered is just one factor to account for in the analysis, "but does not end it." See Hudson, 503 U.S. at 7 (holding "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). The extent of injury may also provide some indication of the amount of force applied. Wilkins, 130 S.Ct. at 1178. A de minimis use of physical force does not violate the Eighth Amendment, "provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. Thus, an inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id.

a genuine issue of fact as to whether constitutionally excessive force was used against the Plaintiff in this instance and should be dismissed.

**<u>Qualified Immunity</u>**

Defendant denies that any of the alleged conduct complained of by Plaintiff gives rise to a constitutional violation. However, Defendant asserts that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, he is entitled to qualified immunity.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

<u>Akers v. Caperton</u>, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

<u>Harlow</u>, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right

8

> applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the Plaintiff fails to show that Defendant violated any of his clearly established constitutional or statutory rights. However, even if there was a violation, the Defendant is entitled to qualified immunity. Thus, the undersigned recommends that summary judgment be granted.

**Pendent Jurisdiction**

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiff's complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

**IV. CONCLUSION**

The Plaintiff has failed to show that the Defendant violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by the Defendant (document #38) for summary judgment be GRANTED IN ITS ENTIRETY and this action dismissed.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.

                            Respectfully Submitted,

                            s/Thomas E. Rogers, III

August 21 , 2015                 Thomas E. Rogers, III
Florence, south Carolina        United States Magistrate Judge

**The parties' attention is directed to the important notice on the next page.**